IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

PAUL BURCHAM and
PATTY BURCHAM PLAINTIFFS

V. Case No. 12-CV-4011

WEYERHAEUSER NR COMPANY DEFENDANTS

MICHAEL ALEXANDER LOGGING and
BITUMINOUS INSURANCE COMPANY INTERVENORS

**MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment filed by Defendant Weyerhaeuser NR Company. (ECF No. 26). Plaintiffs Paul and Patty Burcham have responded. (ECF No. 31). Defendant has filed a reply. (ECF. No. 36). The Court finds the matter ripe for consideration. For the reasons explained below, Defendant's motion is granted.

**BACKGROUND**

On July 5, 2011, Paul Burcham was injured when a tree fell on his leg while using a chainsaw to remove root wads[1] from blown down timber as part of a harvesting operation on property known as Kates Creek. Weyerhaeuser owned the rights to harvest timber on Kates Creek, a U.S. Forestry tract of land. Burcham was employed by independent contractor Michael Alexander Logging, which had entered into a service contract with Weyerhaeuser for harvesting timber between January 1, 2011, through December 31, 2011.

Weyerhaeuser had in place a chainsaw operation expectation for its contractor, which stated that any contractor employee trained to use a chainsaw had to be observed by a Weyerhaeuser

[1] "Root wads" refers to the root systems of upended trees.

representative before he/she was allowed to "trim or buck using a chainsaw." Ron Deramus, a representative of Weyerhaeuser, observed Burcham using a chainsaw at Kates Creek and deemed Burcham competent and adequately skilled to utilize a chainsaw.

Paul Burcham alleges that Weyerhaeuser was negligent in directing and authorizing the use of a chainsaw to remove the downed timber at Kates Creek. Burcham Patty Burcham makes a derivative claim for loss of consortium arising out of the underlying negligence action. This case is presently before the Court on a Motion for Summary Judgment filed by Weyerhaeuser. (ECF No. 26).

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Under this standard, the inquiry is not whether the evidence favors one side or the other, but "whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). When considering a summary judgment motion, the Court "must view the evidence 'in the light most favorable to the nonmoving party.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008) (quoting *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997)). To defeat a motion for summary judgment, however, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (8th

Cir. 1997). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010).

**DISCUSSION**

Weyerhaeuser argues that it cannot be liable for negligence because Burcham is not its employee, and it owes no duty to Burcham. Burcham argues that whether or not he was considered an employee of Weyerhaeuser is a question of fact for the jury. If Weyerhaeuser was Burcham's employer at the time, any liability for the alleged negligence of Michael Alexander Logging could be imputed to Weyerhaeuser. Weyerhaeuser maintains that Michael Alexander Logging was an independent contractor with its own employees and that its actions did not transform its relationship with Weyerhaeuser from an independent contractor relationship to an employer/employee relationship.

**A. Independent Contractor Relationship**

This is a diversity action and is governed by Arkansas state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 645, 78, 58 S. Ct. 817, 822 82 L. Ed. 1188 (1938). Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove the following: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; and (3) that the breach was the proximate cause of the plaintiff's injuries. *Branscomb v. Freeman*, 200 S.W.3d 411, 416 (2004). The general rule in Arkansas is that an employer is not responsible for the negligence of its contractor. *Stoltze v. Ark. Valley Elec. Coop Corp.*, 354 Ark. 601, 607, 127 S.W.3d 466, 470 (2003). When the employer, however, goes beyond certain limits in directing, supervising, or

controlling the performance of the work, the relationship changes to that of employer-employee, and the employer is liable for the employee's negligence. *Draper v. ConAgra Foods, Inc.*, 92 Ark. App. 220, 229, 212 S.W.3d 61, 67 (2005). The nature of an agency relationship is ordinarily a question of fact to be determined by a jury; however, where the facts are undisputed and only one reasonable inference can be drawn from them, the nature of an agency relationship becomes a matter of law for the court to determine. *Id.*

Weyerhaeuser argues that it is immune from liability because Michael Alexander Logging was an independent contractor hired by Weyerhaeuser and not a Weyerhaeuser employee. No fixed formula exists under Arkansas law for determining whether a person is an employee or an independent contractor; thus, the determination must be made on the particular facts of each case. *Ark. Transit Homes, Inc. V. Aetna Life & Cas.*, 341 Ark. 317, 321, 16 S.W.3d 545, 547 (2000). An independent contractor is "one who contracts to do a job according to his own method and without being subject to the control of the other party, except as to the result of the work." *Kistner v. Cupples*, 2010 Ark. 416, at 6, 372 S.W.3d 339, 343. The Arkansas Supreme Court explains:

> The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. But if control of the means be lacking, and the employer does not undertake to direct the manner in which the employee shall work in the discharge of his duties, then the relation of independent contractor exists.

*ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 366, 276 S.W.3d 244, 249 (2008). A written contract creates the relation of employer and independent contractor; however, such relation may be destroyed by conduct of the employer through direction of means and methods of producing physical results. *Id.*

The Arkansas Supreme Court has adopted Restatement (Second) of Agency § 220(2) (1958), which outlines several factors to consider when determining whether an employer-employee relationship exists between two parties:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by time or by the job;
>
> (h) whether or not the work is part of the regular business of the employer;
>
> (I) whether or not the parties believe they are creating the relation of master and servant; and
>
> (j) whether the principal is or is not in business.

*See Draper*, 92 Ark. App. at 229-30, 212 S.W.3d at 67. The right to control is the most important factor in determining whether one is an employee or independent contractor. *Id*. at 230, 212 S.W.3d at 67. "It is the right to control, not the actual control, that determines the relationship." *ConAgra*, 372 Ark. at 366, 276 S.W.3d at 249.

**1. Control**

In the present case, Weyerhaeuser and Michael Alexander Logging entered into a Service Contract—Harvesting. (ECF Doc. 28-3). The contract refers to Michael Alexander Logging as an independent contractor and provides that Michael Alexander Logging controls "the manner of the cutting and hauling of the designated timber." The contract further provides that Michael Alexander Logging "alone shall have the right to determine the persons who shall be employed to perform the work under this contract and agreement and determine the machinery, equipment, and vehicles to be used in the performance of the work." Michael Alexander Logging agreed to "indemnify and save harmless [Weyerhaeuser] against any and all loss and expense by reason of liability for property damage or bodily injuries, including death, of [Michael Alexander Logging's] employees to the extent such are due to the negligence of [Michael Alexander Logging], its employees, agents and subcontractors."

Weyerhaeuser contends that the undisputed facts allow only one inference to be drawn from them, which is that Michael Alexander was an independent contractor and not an employee or servant of Weyerhaeuser. In support of its argument, Weyerhaeuser relies on the Service Contract and the actions and testimony of Michael Alexander and Weyerhaeuser representatives. In contrast, Burcham contends that a reasonable jury could draw an inference that Michael Alexander Logging was subject to the control requisite for a finding of an employer-employee relationship with Weyerhaeuser despite what the Service Contract states. In support of its argument, Burcham cites Weyerhaeuser's chainsaw operation expectation as evidence that Weyerhaeuser "directed" or "required" Michael Alexander to use chainsaws in performing the harvesting operation at Kates Creek.

Weyerhaeuser contractors who elect to use chainsaws in conducting harvesting operations pursuant to harvesting contracts must abide by Weyerhaeuser's chainsaw operation expectation. The chainsaw operation expectation states that a contractor or its employees will not trim/buck any tree using a chainsaw unless the contractor or its employee has been trained in proper safe operation of a chainsaw. The trained person using a chainsaw must be observed by a Weyerhaeuser representative before he is allowed to trim or buck using a chainsaw.

Mike Alexander testified in his deposition that he made the decision to use chainsaws at Kates Creek to harvest the blown down timber because it would be the most effective way to harvest the most lumber from the job. Alexander stated that no one at Weyerhaeuser required him to use chainsaws. He then told Michael Dunn, a contract administrator for Weyerhaeuser, that he had decided to use chainsaws and they discussed the use of chainsaws. Dunn also testified in his deposition that Alexander made the decision to use the chainsaws and that Dunn never instructed Alexander to use chainsaws. Once Weyerhaeuser was satisfied that the employees of the contractor were competent to use chainsaws, Michael Alexander began to use the chainsaws at Kates Creek.

There is no testimony that Weyerhaeuser directed or required the use of chainsaws at Kates Creek. Michael Alexander repeatedly testified that he made the decision to utilize chainsaws in the harvesting of the downed timber at Kates Creek and that no one from Weyerhaeuser ordered, required, or mandated that the use of chainsaws in harvesting the timber. Further, the chainsaw operation expectation simply ensures that, when a contractor elects to use chainsaws, Weyerhaeuser is notified so that it can determine whether the employees of the independent contractor are properly trained in the safety, maintenance, and operation of chainsaws. If the independent contractor's employees pass the safety inspection, Weyerhaeuser allows the independent contractor to follow

through with his decision to utilize chainsaws. This does not equate to supervision or direct control over the details of the work performed by the contractor.

Burcham argues that Weyerhaeuser's daily supervision of Michael Alexander's employees is also evidence of the degree of requisite control for a finding of an employer-employee relationship between Michael Alexander Logging and Weyerhaeuser. In *Williams v. Nucor-Yomato Steel Co.*, the Arkansas Supreme Court discussed the difference between general supervisory control of the outcome and the specific control over the methods of work:

> It is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be a retention of a right of supervision that the contractor is not entirely free to do the work his own way.

318 Ark. 452, 455-56, 886 S.W.2d 586, 587 (1994) (citing Comment c, Restatement (Second) of Torts § 414 (1965)). In contracts for the performance of work, the inclusion of such phrases as "work is to be done in accordance with instructions," "under direction and supervision," and the like does not relate to the method or manner in which work is to be done, and does not govern the details of the physical means by which the work is to be performed, or change the status of independent contractor to that of master/employer or servant/employee. *ConAgra Foods*, 372 ark at 367, 276 S.W.3d at 250.

Here, Timothy Lyon, a skidder operator for Michael Alexander Logging, testified in his deposition that he had no direct communication with Weyerhaeuser representatives on the Kates Creek job and that Weyerhaeuser gave him no direct instruction on the job. He further stated that Weyerhaeuser representatives came to the job site just to "[check] on us." Bruce Wise, also a

skidder operator for Michael Alexander Logging, testified in his deposition that Michael Alexander instructed him on a daily basis and directed his work. Burcham testified in his deposition that Michael Dunn, a Weyerhaeuser contract administrator, would occasionally instruct him where to start the job and would inspect the site one to two times a week. Lyon, the skidder operator, and Burcham described actions of Weyerhaeuser that fall into the category of "general control," the right to inspect the progress of the work and to make to make recommendations.

Burcham has provided no evidence that Weyerhaeuser's supervision crossed the line into the supervision that controlled the methods or operative detail of Michael Alexander Logging's work. There are no facts from which a jury could infer that Weyerhaeuser exerted the requisite control over the means by which Michael Alexander harvested the timber.

**2. Other Restatement Factors**

Weyerhaeuser points to two other restatement factors that favor a finding of an independent contractor relationship between Michael Alexander Logging and Weyerhaeuser.[2] First, Michael Alexander supplied the tools that he and his employees used to complete the work, including the chainsaws utilized. Second, Michael Alexander was paid by the job and the specific work performed. Burcham does not dispute these facts. These two factors, along with control, the most important factor, allow only one reasonable inference to be drawn from them, which is that Michael Alexander Logging was an independent contractor. Thus, under Arkansas law, Weyerhaeuser is not liable for the actions of Michael Alexander Logging and owes no duty of care to Burcham.

---

[2] Weyerhaeuser specifically addresses three of the ten restatement factors: (1) control; (2) the method of payment; and (3) whether the employer or the workman supplies the tools for the job. Burcham addresses the principal factor, control. Neither party addresses the remaining seven restatement factors in their briefs.

**B. Employers are Not Responsible for Negligence of Independent Contractors**

The Arkansas Supreme Court has recognized at least three exceptions to the general rule that an employer is not responsible for the negligence of its independent contractor and owes no duty to employees of its independent contractor. *Stoltze*, 354 Ark. at 607, 127 S.W.3d at 470. First, an employer may be held liable for the conduct of a careless, reckless, or incompetent contractor when the employer was negligent in hiring the contractor. *Id*. Second, an employer may be liable when the employer has undertaken to perform certain duties or activities and negligently fails to perform them or performs them in a negligent manner. *Id*. Third, an employer may be held liable to third parties when it delegates to an independent contractor work that is inherently dangerous. *Id*. Burcham does not allege that Weyerhaeuser was negligent in hiring Michael Alexander Logging as an independent contractor to harvest the downed timber at Kates Creek. Burcham, however, does seem to argue that the other two exceptions should apply here.

**1. Assumption of Specific Duty**

Burcham asserts that Weyerhaeuser should be liable for his injuries because it undertook the specific duty to ensure contractor safety and negligently failed to perform this duty. The contract included language that Michael Alexander Logging should comply with various federal and state safety laws; however, under the Service Contract, the responsibility for the safety of Michael Alexander Logging's employees rested with Michael Alexander Logging. The contract specifically provided that Michael Alexander Logging "agrees to accept full responsibility for the safety of its employees."

Requiring in a general sense that an independent contractor operate and conduct his business in a safe manner is not the same as assuming the responsibility of the safety of the independent

contractor's employees. Weyerhaeuser did observe Burcham and Michael Alexander using a chainsaw, which is consistent with Weyerhaeuser's chainsaw operation expectation for contractors who elect to use chainsaws in conducting harvesting operations. Weyerhaeuser has a general duty to hire competent contractors and its chainsaw operation expectation allows Weyerhaeuser to verify that it has hired a competent independent contractor whose employees are competent to use chainsaws. Because Weyerhaeuser took certain actions consistent with its chainsaw operation expectation does not mean that Weyerhaeuser undertook to perform any certain and specific affirmative duty related to the harvesting of the Kate's Creek tract or that it did so in a negligent manner.

**2. Inherently Dangerous**

An employer may be liable to third parties when it delegates to an independent contractor work that is inherently dangerous. *Stoltze*, 354 Ark. at 607, 127 S.W.3d at 470. This is referred to as the "inherently-dangerous exception" to the general rule that employers are not responsible for the negligence of their independent contractors. Under Arkansas law, however, this exception applies only to third parties and does not extend to the employees of an independent contractor. *Id*. at 616, 127 S.W.3d at 476. "The exception was obviously intended to protect those who have no direct involvement with the hazardous activity, are only incidentally exposed to its risks and have no direct means of insuring themselves against loss." *Jackson v. Petit Jean Elec. Co-op,* 270 Ark. 506, 510, 606 S.W.2d 66, 69 (1980). Because employees of an independent contractor are directly involved in the hazardous activity, have knowledge of the risks, and are insured against injury by Workers' Compensation, the Arkansas Supreme Court has held that there is "no sound justification" for expanding the exception to include employees of independent contractors, a group of people that

the exception "was surely not designed to protect." *Jackson.,* 270 Ark. at 510, 606 S.W.2d 66, 69. Here, Burcham is not a third party but instead an employee of Michael Alexander Logging, an independent contractor. The inherently dangerous exception, therefore, does not apply to Burcham, and any alleged negligence of Michael Alexander Logging cannot be imputed to Weyerhaeuser under the inherently-dangerous exception.

## CONCLUSION

For the reasons stated above, the Court finds that Defendant's Motion for Summary Judgment should be and hereby is **GRANTED**. Plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.[3]

IT IS SO ORDERED, this 23rd day of May, 2013.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

[3] Because Burcham's claims are dismissed, the loss of consortium claim by his wife, Patty Burcham, is also dismissed. *See Sisemore v. Neal*, 236 Ark. 574, 367 S.W.2d 417 (1963).